IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOBBY HARMON,

    Plaintiff,

vs.                                                                         Civil No. 98-343 JP/WWD

DON HOOVER, and
EDWARD CHAVEZ,

    Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the Court upon consideration of a *Martinez* report submitted by Defendants; Plaintiff's Motion for Appointment of Counsel, filed August 20, 1999 **[docket #45]** and Plaintiff's Motion to Amend Complaint, filed January 19, 1999 **[docket #22]**.[1] Plaintiff, who is incarcerated and proceeding pro se and in forma pauperis, alleges violations of the Eighth Amendment and due process.[2] Plaintiff contends that, as a result of Defendants' failure to keep Plaintiff segregated from the prison's Mexican gang which had made threats on his life, he was eventually assaulted and severely injured by these other inmates.

---

    [1] The motion was denied without prejudice on September 21, 1999 [see docket # 49].

    [2] The "deliberate indifference" standard applies to violations of both the Fourteenth Amendment's due process clause and the Eighth Amendment. See Lopez v. LeMaster, 172 F.3d 756, 762 (10th Cir. 1999) (deliberate indifference standard applies even though plaintiff is pre-trial detainee). Therefore, my analysis under the Eighth Amendment includes any due process rights Plaintiff has. See also Whitley v. Albers, 475 U.S. 312 (1986) (substantive rights of a prisoner to be free from excessive and unjustified use of force are best addressed under the Eighth Amendment, noting that "obduracy and wantonness" characterizes the conduct that occurs in connection with "establishing conditions of confinement or restoring official control" (quoting Harris v. Maynard, 843 F.2d 414, 416 (10th Cir. 1988)).

2. During a two month period in 1995, Plaintiff had been transferred several times within the correctional system, and each time he was placed in protective custody or transferred to another facility. However, in late May 1995, he was violently assaulted by inmate Russell Spedalieri. Plaintiff sustained injuries to his head and throat and required treatment at the penitentiary infirmary.

*Legal Standards*

3. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah) (citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). After reviewing the pleadings including the *Martinez* report and response, I conclude that there are no material facts in dispute requiring that this case proceed to trial.

4. Prison officials are liable under the Eighth Amendment for denying an inmate humane conditions of confinement if the officials know of and disregard a substantial risk of serious harm to the inmate. Farmer v. Brennan, 114 S.Ct. 1970, 1979 (1994); see Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992) (prison officials liable for "obdurate and wanton disregard [of serious harm] for the inmate's safety").

*Discussion*

5. The following facts, set out chronologically, are undisputed and are supported by documentation submitted with the *Martinez* report. Harmon was admitted into the New Mexico correctional system in January 1995 as a medium custody inmate. Plaintiff would have qualified

for minimum custody except for the fact that he required closer monitoring for psychotropic medication he was then taking. During a classification review and special needs assessment, Plaintiff identified no known enemies. He also made it known that he was not a gang member and that although he had mental problems he could make it on his own in the general population. Defts' Exs. M, N. After his initial processing, Plaintiff was transferred late January to the Penitentiary of New Mexico's ("PNM") Main Facility in Santa Fe.[3]

    6. On May 3, 1995, Harmon requested voluntary segregation because there was a "hit" on him by members of a Mexican gang. He identified a Ronnie Bocka as the individual who threatened his safety. Defts' Ex. R (at 1). Pursuant to policy, the request was immediately investigated and when it was determined that Plaintiff's safety was jeopardized by remaining in general population, the segregation request was granted. Defts' Ex. R. Harmon was transferred to PNM's North Facility, an administrative segregation unit including maximum security, protective custody and medium security inmates.[4]

    7. As an alternative to long-term voluntary segregation, Plaintiff was transferred at the end of May to Southern New Mexico Correctional Facility ("SNMCF") in Las Cruces, which ranges in custody levels from maximum security to medium security, including protective custody.

---

[3] Aside from Plaintiff's requests for segregation, I find no indication from the considerable documentation provided in the report that Plaintiff's custody classifications were made with a disregard of a need for protective custody of any kind or for any reason. As stated above, the facility took the precaution of increasing custody status based solely on Plaintiff's medication regime.

[4] Exhibits to the *Martinez* report support Defendants' position that initial investigations of voluntary segregation requests were undertaken immediately upon Plaintiff's complaints and also that periodic segregation reviews were done according to policy which appears to provide close supervision of an inmate's situation. See e.g., Defts' Exs. B, P.

Defts' Ex. O, R (at 4). On April 5, Plaintiff claimed that the same people who had threatened him before had also been transferred to SNMCF and were again threatening his life. This time he identified inmates Manuel Armijo, Rosendo Alderette and Leonard Lujan as the individuals who were endangering his safety. Defts' Ex. S (at 1). He requested voluntary administrative segregation which was again immediately granted. Defts' Ex. P.

8. After segregation was continued for several weeks, the decision was made to transfer Harmon out of SNMCF altogether, to Roswell Correctional Center, a minimum custody facility. Ex. P (9/25 chrono.). Since bed space at RCC was not available when the decision was made, Plaintiff was transferred out to be housed temporarily at PNM's minimum restrict unit ("MRU") on April 27, 1995.[5] Defts' Ex. Q. Plaintiff did not request administrative segregation while housed here until after the incident occurred which gives rise to this lawsuit.

9. On May 31, 1995, Harmon was physically attacked and sexually assaulted by inmate Russell Spedalieri, who had confronted him earlier that day claiming that Harmon had set fire to his bed. Defts' Ex. T (at 6). Plaintiff was found bleeding from his left eye and with blood all over his clothing and was taken to the main unit infirmary where he was treated. Immediately after the assault, Harmon identified Spedalieri as the assailant. Misconduct reports were issued to both Plaintiff and Spedalieri, but the misconduct report against Harmon was dismissed.

10. Upon discharge from the infirmary, Plaintiff requested voluntary administrative segregation, naming Spedalieri as the assailant and including the latter in a known enemy list for the first time. Defendants note that the request took less than two hours to process and

---

[5] Plaintiff was no longer on psychotropic medications and no longer required monitoring. Defts' Ex. P (4/21/95 note).

4

implement. Harmon was transferred from the infirmary to the North Facility, PNM's administrative segregation unit.

    11. Neither prison officials nor municipalities can absolutely guarantee the safety of their prisoners. See Berry v. City of Muskogee, 900 F.2d 1489, 1499 (10th Cir.1990). They are, however, responsible for taking reasonable measures to insure the safety of inmates. Id.; Farmer, 511 U.S. at 832-33, cited in Lopez v. LeMaster,172 F.3d 756, 762 (10th Cir. 1999). I find no evidence from the facts set out above which would present a question for a trier of fact on the issue of whether Defendants' conduct exhibited deliberate indifference toward Plaintiff's safety. Rather, based on the particulars of the case, I find that Plaintiff was afforded reasonable protection as required under the Eighth Amendment.

    12. Harmon challenges the *Martinez* report on several grounds, none of which have merit on a legal basis or which raise any dispute of material fact. He characterizes his transfer to SNMCF as a show of Defendants' deliberate indifference to his safety, contending that he never should have been made to leave protective custody or transferred to a minimum custody facility, even on a temporary basis (as was done in late April 1995 with his transfer to Santa Fe's MRU).

    13. Plaintiff does not argue that any of his requests for voluntary administrative segregation were rejected. Rather, he claims that because he was in constant danger from a Mexican gang which infiltrated the entire prison system at large, he should have been in protective custody on a long-term basis.[6] To support this proposition, Plaintiff cites to Walsh v. Mellas, 837 F.2d 789, 797-98 (7th Cir. 1988), which I find clearly distinguishable from the instant case. The

---

[6] Plaintiff alludes to having a "snitch jacket" involving the "S.N.M." organization ("Sindicato Nuevo Mexico," referring to a Mexican gang). Defts' Ex. U, Resp., Ex. K.

5

Walsh court indicated that in order to find deliberate indifference on the part of prison officials, a plaintiff would have to show that the officials were aware of facts such as actual knowledge so that a conscious refusal to prevent the harm can be inferred from the defendant's actions or inactions.

14. This requirement is consistent with the standard in the Tenth Circuit, where the prison official's state of mind is measured by a subjective, rather than an objective, standard, even assuming that Harmon has shown he is incarcerated under conditions posing a substantial risk of serious harm. See Wilson v. Seiter, 501 U.S. 294, 297 (1991), cited in Farmer v. Brennan, 511 U.S. 825, 834 (1994) (noting that Eighth Amendment claim for failure to protect is comprised of both subjective and objective elements). In other words, a finding of "deliberate indifference" requires that the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Riddle et al v. Trevino et al, 83 F.3d 1197, 1204 (10th Cir. 1996) (citing Farmer, 511 U.S. at 834).

15. In Walsh, there was evidence that gang activity was a serious security problem where plaintiff was housed at the time of the underlying incident; that this problem was known by the two defendants; that the risk of assault by gang members upon inmates targeted by gangs was real and significant; that plaintiff was, and was known to be, such a targeted inmate and therefore a member of an identifiable group of prisoners for whom risk of assault was a serious problem. Thus, the Walsh court found that this state of affairs constituted "deliberate indifference or reckless disregard of the prisoner's right to security." Walsh, at 795-96.

16. There are no facts in this case which suggest previous problems with confrontations or injuries with the same group or gang or even with the same individuals such that Defendants

6

could be said to be aware that Plaintiff was exposed to a continuous threat to his safety outside of protective custody. Attached to Plaintiff's response is a "Notice to Inmate Population" which identifies the "SNM" group as a "Security Threat Group" pursuant to department policy. Resp., Ex. C. However, because the notice is dated February 3, 1999, almost four years *after* the underlying incident in this case, it is not useful in attributing awareness to Defendants of any danger this group posed to Plaintiff.

      17.    Also, as Defendants point out, Plaintiff was at Santa Fe's MRU for over a month before the assaulted occurred, a fact which undercuts Plaintiff's contention that he was the target of a gang-ordered "hit" in constant risk of danger. On initial screening, Plaintiff indicated that he had no known enemies. As related above, each time Harmon notified Defendants of a risk to his safety, immediate steps were taken to investigate and grant protective custody. Since liability in this case turns on whether Defendants were deliberately indifferent to known risks to Plaintiff and not simply on whether Plaintiff himself believed he was in danger, Plaintiff cannot withstand summary judgment because there is no dispute of fact which suggests an awareness of any such risk that was not reasonably handled.

      18.    Further, Harmon did not identify the Mexican gang as a known enemy until *after* the May 31st incident. Resp., Ex. K & K-1 (dated 6/7/95). In previous requests for protective custody, he had named other individuals but had not mentioned them as gang members; nor was Spedalieri identified as a gang member when he was named as the assailant. When prison officials finally became aware of this danger, Plaintiff was placed in voluntary administrative segregation and then transferred to PNM's North Facility to continue in protective custody. Defts' Ex. U at 1, 2.

19. Harmon also appears to challenge the Department of Corrections policy by contending that it should be more "aggressive" toward granting protective custody status and that "common sense" should be used by allowing individuals to stay in protective custody. See Resp. at 5. The policy provides for protective custody for any inmate who believes they are in jeopardy of serious bodily harm or "life threatening conflict with other inmates." Defts' Ex. A. Under this provision, Plaintiff was granted protective custody each time it was requested and each time the Defendants became aware of a risk to his safety.

20. Nevertheless, Plaintiff takes particular issue with one of the Department's objectives, i.e., to make a "reasonable effort to reintegrate administrative segregation inmates into the general population," which Plaintiff cites as the basis for his release into a minimum custody facility. See Defts' Ex. B at 2. The Eighth Amendment affords the right to be "*reasonably* protected" from constant threats of violence but does not necessarily include the right to long-term protective custody. Riddle, 83 F.3d at 1204 (emphasis added). Thus, a policy which reflects a facility's efforts to reintegrate inmates into the general population does not in itself violate any of Plaintiff's constitutional rights or protections.

21. Nor was Plaintiff's classification as a minimum custody inmate pursuant to Department policy a basis for an Eighth Amendment claim. Custody classification is based on factors such as safety risks, escape risks, misconduct, etc. Defts' Ex. J (Custody Classification Scoring Form). Given the fact that Plaintiff had not identified any known or potential enemies except those specifically identified at the times he requested protective custody, Plaintiff's classification as a minimum custody inmate and his transfer in late April to a minimum custody

facility were not unreasonable decisions and are not evidence of deliberate indifference to Plaintiff's safety.

*Conclusion*

22. The Court must look beyond the unfortunate nature of incidents such the one suffered by Plaintiff. The relevant inquiry here is whether Defendants violated Plaintiff's Eighth Amendment rights or whether they took measures to reasonably protect Plaintiff from threats of violence and assaults from other inmates. The evidence, which consists of the material undisputed facts, reveals that Defendants took immediate action in response to any notice that Plaintiff's safety was in jeopardy. Plaintiff has not presented any dispute of facts which demonstrate that Defendants showed wanton disregard to his safety or even that they were aware or should have been aware of any danger or risk to his safety in connection with the May 1995 incident which resulted in his injuries. I further find that the Department's policy regarding protective custody and voluntary administrative segregation is not constitutionally deficient

23. Given my findings above regarding the disposition of this case, I recommend that Plaintiff's request for counsel be denied as moot. I also recommend that Plaintiff's motion to amend the complaint[7] be denied as moot for the same reason.

**Recommendation**

I recommend that Plaintiff's civil rights complaint be DISMISSED WITH PREJUDICE against all Defendants in its entirety; and that Plaintiff's Motion for Appointment of Counsel,

---

[7] The amended complaint would identify certain individuals and prison officials who were formerly not identified.

**[docket # 45]** be DENIED AS MOOT; and Plaintiff's Motion to Amend Complaint **[docket #22]** be DENIED AS MOOT.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE